STATE OF MAINE                           SUPERIOR COURT
Penobscot, SS.                           Docket No. CV-08-135
                                         2AMM - PEN - 1/28/2011


ERVIN DUMOND,                )
                Plaintiff,   )
                             )
                             )
        v.                   )           **JUDGMENT**
                             )
                             )
RONALD P. KOBRIN,            )
                Defendant.   )


This matter came before the Court for hearing on December 13, 2010. Plaintiff appeared
with his attorney, Arthur Grief, Esq. Defendant did not personally appear, but
appeared through his attorney, Bernard Kubetz, Esq. Defendant was defaulted on
December 2, 2008 (J. Murphy), and the December 13, 2010 hearing was a hearing on
damages.

This case arises from a motor vehicle accident that occurred on November 26, 2005. Mr.
Dumond was the driver of a motor vehicle that was struck on the driver's side by a
vehicle driven by Mr. Kobrin. Mr. Dumond was taken by ambulance from the scene of
the accident to the emergency room. At the emergency room, Mr. Dumond complained
of rib and neck pain, and reported that he had pre-existing back and neck problems.

As a result of the motor vehicle accident, Mr. Dumond suffered physical injury and
pain, psychological injury and loss of earnings. Mr. Dumond had several physical
ailments and psychological difficulties prior to the accident that were aggravated by the
accident. He also suffered some injuries that did not have any pre-accident component.

The Court finds that Mr. Dumond suffered injury to his ribs in the November, 2005
accident, and suffered pain for some period of time after the accident from the rib
injury. The rib injury was a new problem, and is not related to any pre-existing
problem. Mr. Dumond suffered pain and numbness in his hands. The numbness was a
new issue – without a pre-accident component. For awhile Mr. Dumond needed help
taking care of some of his personal needs. His wife provided a fair amount of care to
Mr. Dumond to help in this regard. Both the rib injury and hand difficulties pretty
much resolved at some point in time by the fall of 2006. Additionally, Mr. Dumond
began to suffer nightmares after the motor vehicle accident. These resolved over time,
particularly with the assistance of medication.

Mr. Dumond suffered an aggravation of his pre-accident neck and back problems in the
November, 2005 accident. The back and neck aggravation caused Mr. Dumond pain
and limitation for an extended period of time. Several years before this accident, Mr.
Dumond had back problems and had back surgery in approximately 2000. He was out

1

of work for about 3 months after that surgery. Thereafter, he had varying amounts of back pain up to the time of the November, 2005 accident. In fact, Mr. Dumond received regular treatment from Dr. Simone prior to the November, 2005 accident, including osteopathic back manipulation, and he took prescribed pain medications on an as-needed basis. Mr. Dumond's pre-accident back pain continued off and on right up to the time of the November, 2005 motor vehicle accident. In November of 2005 just before the accident in question, Mr. Dumond told Dr. Balian he was having a lot of back pain and problems with his legs, and that the back problems were interfering with his ability to function. He told Dr. Balian that he could not sit or stand for too long and that his knee was bothering him.

Additionally, prior to the November, 2005 accident, Mr. Dumond suffered from chronic and persistent psychological difficulties. In particular, Mr. Dumond suffered from depression, anxiety and sleep difficulties. Mr. Dumond regularly treated with Dr. Kawamura, a psychiatrist, before the November, 2005 accident for his psychological difficulties. In the first medication management appointment after the accident, on December 2, 2005, Nurse LeMay noted that Plaintiff had recently been involved in a motor vehicle accident, but despite this, his depression had improved and he was less anxious[1]. *See Plaintiff's Exhibit #9.* In the next visit, on January 13, 2006, the Nurse noted that Plaintiff's depression had improved, but he was "somewhat more anxious as he has returned to work." *Id.* On April 7, 2006, Nurse LeMay recorded that Plaintiff's anxiety had lessened since leaving his job. *Id.* There is little doubt that Mr. Dumond's underlying psychological difficulties impacted this fragile plaintiff's perception of his injuries, the speed of his physical recovery and may have contributed to the development of PTSD symptoms.

Mr. Dumond was on disability as a result of a knee injury and surgery at the time of this accident, and was scheduled to return to work on December 1, 2005. The knee injury occurred in November of 2004, and the surgery was in December of 2004 or early 2005. Mr. Dumond did not return to work as scheduled a week or so after the accident at issue in this case. Rather, he returned to work in January or February of 2006. However, he did not get out into the field to sell his insurance products, but attempted to work from home. While working from home he couldn't sit for very long, couldn't hold a pencil, and the pain medications caused him difficulty communicating with clients.

Mr. Dumond went out of work again in March of 2006. He remained out of work until his employment was terminated on July 23, 2006.

Prior to the November, 2005 accident, Mr. Dumond had a long-standing (7 ½ years) physician-patient relationship with Dr. Simone. Remarkably, Mr. Dumond did not seek any treatment from Dr. Simone relating to the injuries he sustained in the November, 2005 accident until January 20, 2006. However, when Dr. Simone treated Mr. Dumond in January of 2006, he opined that he thought it was reasonable that Mr. Dumond had been "out of commission" for the 6 weeks after the accident.

---

[1] Yet, on December 7, 2005 another provider, Mr. Pasquin, noted that Plaintiff had been anxious since the motor vehicle accident.

Plaintiff is claiming medical bills of $15,895.28 as a result of this accident. While Defendant has questioned the extent to which some of these medical bills are related to the motor vehicle accident in question, the Court has no way to apportion the bills between pre and post accident needs and therefore considers the total $15,895.28 in its award. *See Lovely v. Allstate*, 658 A. 2d 1092 (Me. 1995).

Ms. Dumond testified that it took Mr. Dumond about one year to physically recover from this accident. She further initially testified that he had emotionally improved before his employment was terminated, but had a very difficult time emotionally after the termination of his employment. On cross-examination she testified that Mr. Dumond was back to his pre-accident psychological condition before his employment with Prudential was terminated. However, on re-direct she testified that although his psychological condition had improved prior to his termination from Prudential, he was not yet back to his pre-accident psychological condition as of July 1, 2006. Mr. Dumond testified that he was physically back to his pre-accident condition by the fall of 2006. Dr. Simone opined in his deposition that Mr. Dumond was physically back to his pre-accident condition by the fall of 2006. The Court finds that Mr. Dumond was essentially back to his pre-accident psychological condition by July of 2006 before his employment was terminated and back to his pre-accident physical condition by the fall of 2006. While Mr. Dumond may have taken much longer than others to heal both physically and psychologically from this accident due to his pre-existing conditions, defendant is responsible for the physical and psychological injuries. *See* Restatement (Second) of Torts § 461.

Clearly, the termination of Mr. Dumond's employment was psychologically devastating for him. It seems that it was not until Mr. Dumond got back to work for Bankers Life in March of 2007 that his psychological condition once again improved. Once Mr. Dumond returned to work in March of 2007 he once again became a top producing salesman.

A difficult issue in this case is the claim for loss of wages. Mr. Dumond was out of work on disability at the time of this accident. In fact, he had been out of work for about a year for a knee injury when the motor vehicle accident occurred. Mr. Dumond had a return to work date of December 1, 2005 at the time of the November 26, 2005 motor vehicle accident. Mr. Dumond had worked for Prudential Insurance Company for over 25 years at the time of this accident, and he was a high-producing sales agent. In the years before this accident he had earned (lines 7 and 12 of the 1040) the following:

    2003 - $120,385.00
    2004 - $214,660.00
    2005 – $79,277.00; out on disability for the knee issue through 12/1/05

From approximately 2002 to 2003, Mr. Dumond worked as a manager of agency training. He then returned to his position as a sales representative and this position allowed him to increase his earnings.

One question related to the loss of wages claim is whether Mr. Dumond would have returned to work as scheduled on December 1, 2005, but for the motor vehicle accident in question. Mr. Dumond had expressed multiple concerns about returning to work on

3

December 1, 2005. In fact, just the week before the accident Mr. Dumond expressed his concerns about returning to work to Dr. Balian. Mr. Dumond was in a similar situation after his earlier back surgery when he was worried about returning to work after being out for an extended period of time. After returning to work after his back surgery, Mr. Dumond had very productive earning years. The Court finds that Mr. Dumond would have returned to work on December 1, 2005 as scheduled, but for this November 26, 2005 accident – at least for some period of time. Importantly, Mr. Dumond's return to work in late 2005/early 2006 was necessary for him to collect the large amount of money he was owed in residuals.

Another difficult aspect of the loss of wages claim is Mr. Dumond's testimony that if he had returned to work on December 1, 2005 as scheduled, it would have been just "like starting over again". Given the nature of his employment, since he had been out of work for a year, he did not have any current clients and he did not have any prospects. Moreover, even had the November 26, 2005 accident not occurred, Mr. Dumond would have been returning to work on December 1, 2005 with on-going back difficulties and limitations and significant on-going psychological issues – both of which would have substantially negatively affected his ability to work and his earnings. Therefore, the Court is convinced that in 2006 Mr. Dumond would not have earned anything close to what he had earned in his prior years - even had the November 26, 2005 accident not occurred.

Perhaps the most difficult aspect of the loss of wages claim is the cause for termination of Mr. Dumond's employment with Prudential in July of 2006. Plaintiff argues that the loss of his employment was caused by the November, 2005 accident. Defendant argues that the November, 2005 accident did not play a substantial part in Mr. Dumond's employment being terminated in July of 2006. There had been many changes at Prudential over the years of Mr. Dumond's employment. Mr. Gagnon, Mr. Dumond's boss during the last 9+ years of his employment at Prudential and his brother-in-law, retired from his 32+ year career with Prudential in September of 2004. In September of 2004 Prudential significantly downsized and Mr. Gagnon would have had to post for a position after the downsizing, and had he been successful in his application, he would have had to move to remain employed. Plaintiff worked from the Bangor office, and the Bangor office eventually closed. Mr. Dumond himself noted that Prudential had made many changes that were not favorable to the employees. The commission schedule had been reduced and the clerical support in Bangor had been eliminated

On November 21, 2005, Mr. Dumond expressed significant concern to Dr. Balian that Prudential was winding up the business, and he was concerned he would lose his employment. (*See* Balian dep. 7:7-21; 18:1-4) Mr. Dumond also related to Dr. Balian in November, 2005 that Prudential was downsizing again with plans to close its Bangor operation. (See Balian dep. 7:7-21. 17:25-18:4), 20:16-20) Prudential had cut the number of employees who were working in Bangor to just him (Mr. Dumond), and he had to answer the telephone and pay the rent and office expenses, which he did not have to do before. (See Balian 7:11-15, 18:5-12) As of November 21, 2005, just days before the accident at issue in this case, Mr. Dumond was concerned that Prudential would ultimately lay him off. (See Balian dep. 7:19-21)

4

After careful consideration of all the evidence, the Court is not satisfied that the November, 2005 accident played a substantial part in the termination of Mr. Dumond's employment. Therefore, the Court considers Plaintiff's lost wages between December 1, 2005 and July 23, 2006 in determining its award.

Based upon all of the foregoing, the Court awards Plaintiff $80,000.00 as damages in this case.

The Clerk shall enter this Judgment for the Plaintiff upon the docket by reference.

Dated: January 18, 2011

Ann M. Murray,
Justice, Maine Superior Court

Judgment entered upon the docket on 1/28/11.

5